**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**REBECCA LYNN MELDER**                                                                               **PLAINTIFF**

**V.                             CASE NO.: 4:11CV00880 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                                                               **DEFENDANT**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Rebecca Lynn Melder appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").[1]  For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.       <u>Background</u>**

On February 13, 2008, Ms. Melder protectively filed for DIB, alleging disability beginning on January 1, 2005, due to kidney removal, fibromyalgia, chronic pain, liver malfunction, left knee endoscopy, Barrett's esophagus, connective tissue disease, migraines, restless legs, and rheumatoid arthritis.  (Tr. 196-198, 216, 220)  Ms. Melder's claims were denied initially and upon reconsideration.  At her request, an Administrative Law Judge[2] ("ALJ") held a hearing on March 9, 2010, at which Ms. Melder appeared with her attorney.  (Tr. 92)  At the hearing, the ALJ heard testimony from Ms. Melder, her husband, and a vocational expert ("VE").  (Tr. 92-154)

---

[1] The parties consented to the jurisdiction of the Magistrate Judge.  (#3)

[2] The Honorable David J. Manley.

The ALJ issued a decision on July 28, 2010, finding that Ms. Melder was not disabled under the Act. (Tr. 81-87) On October 31, 2011, the Appeals Council denied Ms. Melder's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-5)

Ms. Melder was fifty-four years old at the time of the hearing. (Tr. 98) She had a high school education and some vocational training. She had past relevant work as an office manager or bookkeeper. (Tr. 141, 239-241)

Ms. Melder's insured status for DIB ended on March 31, 2010. She was required to show that she was disabled prior to this date.

## II. Decision of the Administrative Law Judge

The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[3]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g).

---

[3] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. § 404.1520(a)(4)(iv).

The ALJ found that Ms. Melder had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. 83) And he found that Ms. Melder's fibromyalgia was a severe impairment. (Tr. 83-84) The ALJ also found, however, that Ms. Melder did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526). (Tr. 84)

The ALJ determined that Ms. Melder had the residual functional capacity ("RFC") to perform a full range of light work. (Tr. 84-86) Because the ALJ determined that Ms. Melder retained the RFC to perform her past relevant work, he found her not to be disabled. (Tr. 87)

### III. Analysis

#### A. *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but,

the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

  B. *Plaintiff's Arguments for Reversal*

  Ms. Melder claims the ALJ erred by finding: (1) that fibromyalgia was her only severe impairment; and (2) that she retained the RFC to perform her past relevant work. (#11)

  C. *Severe Impairments*

  Ms. Melder claimed disability due to kidney removal, fibromyalgia, chronic pain, liver malfunction, left knee endoscopy, Barrett's esophagus, connective tissue disease, migraines, restless legs, and rheumatoid arthritis. (Tr. 220) She testified that her fibromyalgia caused her pain. (Tr. 114) Her attorney stated that her liver malfunction was no longer impacting her. (Tr. 139)

  Ms. Melder had the burden to prove that her impairments were severe. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). The ALJ found that of all the claimed impairments, only migraines, Barrett's esophagus, and restless leg syndrome were even mentioned in the medical records. (Tr. 83) He found that there were no medical documents to support either then-current migraines or any treatment for migraines. (Tr. 83) He found further that there was no supportive medical evidence to show that Barrett's esophagus or restless leg syndrome significantly limited Ms. Melder's work capacity. (Tr. 83)

To meet her burden of proving her impairments were severe, Ms. Melder needed to cite evidence in the record supporting her argument. She cited a physical RFC checklist, completed with Ms. Melder's assistance, by her treating physician, Fred Nagel, M.D. (Tr. 496-499)

Dr. Nagel's physical RFC checklist stated that Ms. Melder's prognosis was fair and that anxiety was affecting her condition. (Tr. 496-497) A consultative mental diagnostic evaluation found no evidence of a psychiatric or anxiety disorder. (Tr. 500-507)

Dr. Nagel listed extreme limitations, but without supporting medical evidence or testing. A conclusory checkbox form has little evidentiary value when it provides little or no elaboration and cites no medical evidence. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) The limitations were internally inconsistent and the admitted result of Ms. Melder's subjective allegations.

Dr. Nagel said that Ms. Melder could walk a maximum of two city blocks without rest or severe pain. (Tr. 497) But he also said that during an eight-hour workday, Ms. Melder would need to walk every fifteen minutes, for ten minutes each time. (Tr. 498) This would mean, according to the checklist, that Ms. Melder must walk over three hours each eight-hour workday to be able to work. But the checklist states that Ms. Melder could not even walk two hours in an eight-hour workday. (Tr. 497)

Dr. Nagel also said that during an eight-hour workday, Ms. Melder would have to take a fifteen minute break about every thirty minutes. (Tr. 498) This would require over two and a half hours of rest each eight-hour workday. It is not clear how Ms. Melder would rest, but Dr. Nagel stated that she could not even sit for two hours in an eight-hour workday. (Tr. 497)

With her condition, Ms. Melder was still able to go on an eight- or nine-day bus trip to the Northeast to look at the leaves. (Tr. 133, 139) Ms. Melder stated that she could walk around the bus and the bus made frequent stops. But if she really could not sit, stand, or walk for even four hours during an eight-hour span, an eight- or nine-day bus trip would not be possible.

Ms. Melder testified that she was in Dr. Nagel's office when he completed the checklist. (Tr. 109-110) Dr. Nagel asked Ms. Melder the questions on the checklist, and she gave him the answers. (Tr. 110)

There is an additional problem with relying on the checklist for the argument that the ALJ erred by finding that fibromyalgia was Ms. Melder's only severe impairment. Dr. Nagel listed only one diagnosis–fibromyalgia. (Tr. 496) Dr. Nagel noted chronic pain, but Ms. Melder testified that her fibromyalgia caused her pain. (Tr. 114) The ALJ found fibromyalgia, with symptoms of pain, to be a severe impairment. (Tr. 83, 85-86) Ms. Melder also cited almost the entire medical record, and stated, "even a cursory review . . . clearly reveals Ms. Melder's longstanding battle with pain and functional restriction."

(#11 at p. 11) The ALJ noted and credited, to an extent, Ms. Melder's longstanding pain. (Tr. 85-86) The ALJ's RFC determination, which is not challenged, included functional restrictions. (Tr. 84-86)

The only other medical evidence Ms. Melder cites to support an additional severe impairment is found in records submitted to the Appeals Council. (Tr. 8-43, 60-64) These records are almost exclusively from a time period from October 2010, to August 2011. Ms. Melder's insured status for DIB ended on March 31, 2010. She had to prove she suffered a disability by that date to be eligible for benefits. These records reflect Ms. Melder's condition six months after the relevant period, and several months after the ALJ issued his decision on July 28, 2010.

When a claimant submits evidence to the Appeals Council that was not submitted to the ALJ, the Appeals Council must determine whether that evidence is "new and material" and "relates to the period on or before the date of the ALJ's decision." 20 C.F.R. § 404.970(b). The evidence is new if it is more than merely cumulative of other evidence in the record. *Bergmann v. Apfel*, 207 F.3d 1065, 1069-1070 (8th Cir. 2000). The evidence is material if it is relates to the claimant's condition for the relevant time period and does not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *Id*.

Ms. Melder cites the new records and argues that she has been suffering symptoms and complaints for "some time". (#11 at p. 11) The medical record Ms. Melder cites and

quotes does not actually say she has been suffering symptoms for "some time." (Tr. 60) (#11 at p. 11) Instead, the medical record states that she "may have early stages of lupus . . . ." (Tr. 60) The early stages of lupus, six months after the relevant time period, would be an after-acquired condition.

A separate record does say that Ms. Melder has had symptoms for "quite some time," but confirms that she is "primarily suffering from fibromyalgia." (Tr. 64) Medical records from 2002 show that Ms. Melder's condition then was very similar to her condition in 2010. (Tr. 67-74) Ms. Melder performed her past relevant work until 2005, almost three years after the medical tests in 2002.

The evidence from the relevant period shows that Ms. Melder suffered from severe fibromyalgia with associated chronic pain. Her attorney made it clear at the administrative hearing that the ALJ had all relevant medical records. (Tr. 95) The Commissioner did not err in consideration of medical records from six months after the end of the relevant period. The ALJ certainly did not err by failing to consider medical records that were not in existence until three months after his decision.

The only medical evidence from the relevant time period that Ms. Melder cites to support her argument that she suffered additional severe impairments lists only fibromyalgia as an impairment, the same impairment found severe by the ALJ. Ms. Melder failed to cite any medical evidence to support her contention that her other

impairments were severe.  Accordingly, the ALJ did not err in finding only Ms. Melder's fibromyalgia with associated pain as severe.

     D.    *Past Relevant Work*

A claimant is not disabled if she retains the residual functional capacity to perform: (1) the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Wagner v. Astue*, 499 F.3d 842, 853 (2007).  The ALJ may seek vocational expert testimony to evaluate a claimant's ability to perform past relevant work. *Id*.

In this case, the ALJ found that Ms. Melder retained the RFC to perform light work. (Tr. 84-86)  Ms. Melder did not present an argument, or reference any evidence, to challenge the RFC determination. (#11)

The VE testified that Ms. Melder performed her past relevant work as a bookkeeper and office manager at the sedentary, skilled level. (Tr. 141)  Ms. Melder performed her past relevant work as it was generally performed in the national economy. (Tr. 141)  The VE testified that a hypothetical individual with Ms. Melder's RFC, age, and educational and work history could perform this past relevant work. (Tr. 141-142)

Ms. Melder states, without any supporting argument, that the ALJ's past relevant work finding was not supported by substantial evidence. (#11 at p. 10-11)  When an ALJ's hypothetical captures all of the concrete consequences of a claimant's

impairments, as here, VE testimony constitutes substantial evidence supporting the ALJ's disability determination.  *Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011).  The VE's identification of Ms. Melder's past relevant work, combined with the ALJ's RFC finding and hypothetical, was sufficient to support the ALJ's finding at step four.

## IV.  Conclusion

The Court has reviewed all of the evidence in the record.  There is sufficient evidence in the record as a whole to support the Commissioner's determination that Rebecca Lynn Melder retained the RFC to perform her past relevant work.

Accordingly, this appeal is DENIED, and the Clerk of Court is directed to close the case, this 1st day of February, 2013.

_____
UNITED STATES MAGISTRATE JUDGE